I would like to address four separate issues relating to the appeal. Firstly, the failure of the board and the immigration judge to remand for the Convention Against Torture. Secondly, the issue on persecutor as to the definition of what is a persecutor. Third, the issue of ineffective assistance of counsel. And finally, the due process issues which were indicated in the appeal. Your Honor, on the Convention Against Torture, the immigration judge issued a decision in 1999. The board issued a decision in 2002. There was a timely filed motion to reopen. Neither the immigration judge nor the board addressed that issue. Relief under Convention Against Torture is an independent ground regardless of whether the petitioner was found to be a persecutor. And for that reason alone, the case should have been remanded back by the board to the immigration judge. On the issue of ineffective assistance of counsel, the immigration judge found that there was no need for former counsel to submit background information relying solely on country conditions submitted by the Department of State. Moreover, there was a finding that the petitioner's first counsel represented him simply by attending the hearing. There was no pre-asylum preparation. By analogy, Your Honor, if Martha Stewart's attorneys make a strategic decision to put on a skimpy defense, it does not mean they didn't represent her previously. In this case, in a complicated asylum case, the lawyer simply showed up. And I believe that on the facts alone here, that case should have been reminded. The immigration judge took a very mechanical view of Madoff-Lazada. There was a complaint to the State Bar. There does appear to be substantial compliance with Madoff-Lazada. And there was a written letter outlining the various complaints against the first counsel. What would a competent lawyer have done with these facts? A competent lawyer in an asylum case, Your Honor, would have spent at least several hours preparing this particular individual as to the merits of his asylum claim and would have addressed the record on the key issue here on whether or not he was a persecutor. What the immigration judge has done is basically asked a single question or a series of questions, come to the conclusion that the Petitioner was a persecutor, and therefore said there was no need for effective assistance of counsel because they would have found him ineligible for asylum anyway because of the ground of persecutor. Yet particularly Your point, the Petitioner admitted, did he not, numerous aggressive acts towards Croats? That's correct, Your Honor. There's two points here. Including violent acts? Yes, Your Honor. And he also admitted that in some instances this was not in self-defense? According to the record, that's correct, Your Honor, but... Where did he admit that? He... Where did he admit that it was not in self-defense? Before you give that up, I'd like you to tell me. Okay. I believe that the immigration judge asked him whether there was any acts of violence against others, and he said most of the time, something to the effect that most of the time we were fighting against... Most of the time they attacked us, but sometimes we went after them. He said most times happened because they were coming into our area like we were protecting our area. That's correct. Where does he say that I sometimes went elsewhere and attacked them? Before you give that up, that's what I want you to point me to. I'm not sure I recall from the... I understand what he said, that most times they came to our area and we were protecting our area. It's not clear to me that the inference from that is sometimes I went to their area and attacked them, but you seem to be conceding that. Do you want to concede that? I do not wish to concede that, Your Honor. I'm not sure... Is it in the record that he ever said that? I believe there are some responses which would indicate that... Why don't you let the government pick up on that? Yeah, yeah. You've answered the judge's questions, and for the record, you're not conceding that point. Thank you, sir. Why don't you move on to your next point? Okay, the main point on the issue of persecutor is that the context here, as indicated by the petitioner, was not of ethnic cleansing. This took place when there was civil unrest prior to the Civil War, and it appears to be that the petitioner was a member of a group, of possibly a violent group, but it was in the general context of when everyone was fighting everyone else. I think the definition, literal definition, on account of race or religion is really stretching overbroad. By this definition, everyone in the region would have been a persecutor. When the petitioner says he was acting in self-defense, applying this definition, Jews in the Warsaw Ghetto fighting against the Nazi oppressors would have been fighting against them because they were Nazis, and therefore, objectively,  this is not ethnic cleansing, and it clearly appears to be something akin to a gang fight with sticks and knives. It may not be savory, but in the context of what was happening at that time, there's no indication that this was an organized militia or any kind of governmental type of persecution of others. More importantly, there's no corroborating evidence of persecution. This whole incident was elicited by the immigration judge who basically commandeered the proceedings, starting off with the first 20 pages of the record by asking a series of questions which were fairly leading questions, and I believe they were legal questions, which almost resulted in a foregone conclusion that the petitioner would be found to be a persecutor. If there's some evidence, some indication that he persecuted people, whose burden is it to offset that? You know what, I believe that if it's found, if this evidence is introduced by the government, then the petitioner, the respondent at that time would have the burden to prove negatively that he's not a persecutor. The question... Did he put in any evidence to show that he was not? I believe that the only evidence in the record is the testimony is the question. There's neither evidence initiated by the government nor by the petitioner, except for his attempts to explain what had happened, again, with proper preparation, with the availability of an expert witness, possibly who has declined to explain the context. There could have been evidence. The immigration judge refused an expert. Okay. Finally, Your Honour, I also wish to address the issue of the asylum application on line 31, where the petitioner indicated that he was afraid of dying under torture from Muslim, Croatian and communist militia. This was in 91, subsequently, and I think the government's argument was that there was no fear of torture raised either in the record or in the motion to reopen. I believe there is evidence in the record of the petitioner's fear. Do you want to save your last minute or so? Yes, I will. Thank you very much for your argument. Thank you, Your Honour. Is Ms. here? See, originally, Ms. Lightbody was going to argue all four of these. We thought that might be too mean to have her do that, so I came in. All right. Why don't we start with Judge Fernandez's question about where in the record there's an indication where the petitioner admitted violent acts against Croats that were not in self-defense, other than the use of the word most? Yes, Your Honour. We saw, our position is that he admits to those acts at AR-69, and there he does use the word most, most. What line? I don't believe the AR is. Four, line four. That's correct. Most times happened because they were coming in our area. That's correct, Your Honour. Yes. So we were protecting our area. That is a characterization he made of his activities with the militia. He says, well, like I said, most of the time they were in our property, I would say. That's what he says. That's what he says, Your Honour. Is that all we're basing the claim that sometimes he went in other people's areas and attacked them? No, Your Honour. I think we're basing... What do you base that on? I think we're basing it on a couple different things. First of all, his... I think we're basing it on a couple different things. First of all, there are country reports in the record indicating the history of tension between the Bosnian Serbs, the Catholic Croats, and the Muslim Bosniaks in the former Yugoslavia. Secondly, there is his testimony itself. And frankly, Your Honour, there is the common public knowledge at that time that the Bosnian Serbs had initiated ethnic cleansing in the former Yugoslavia prior to the civil war. Mr. Vukmurovic, excuse me for pronouncing it incorrectly, himself admitted that, yes, the Bosnian Serbs initiated the program of ethnic cleansing that led to the civil war in 92. Well, but when I'm asking... The thing is, we do have authorities who say the fact you belong to an organization, if you're not participating in any of its evil, then that's okay. My problem is nobody asks the next question. Maybe it just comes down to a burden of persuasion issue. Nobody asks the next question. What do you mean when you say most of the time they came to our property? Government didn't. He didn't. His attorney didn't. Judge didn't. Nobody asked the next question. But, you know, suppose I said, well, most of the time they came to my house to attack me. And then you asked me the next question. I said, well, some of the times, though, I was in the middle of town and they attacked me. And other times I was in a different town and they attacked me. But the only time I ever did anything was defensive if you asked me the next question. So I'm just wondering, is it just burden of persuasion we're talking about? Who had the job of asking the next question? I think so, Your Honor. I see your point. Certainly the case could have been developed more fully. There's no question in that regard. However, here the question before the court is whether the record compels reversal of the immigration judge's decision. Contrary to opposing counsel's assertion, Mr. Bukmurovic's counsel below ---- Is it A or B? I mean, do we have to either accept or reject the finding, or could we remand for a further inquiry? Your Honor, certainly under Ventura, the court could remand for further inquiry. However, the government does not ---- would urge the court not to construe Ventura to require remand when remand is futile. In this case, there is no evidence in the record that would support Mr. Bukmurovic's allegations that he makes right now before this Court. Do you think ---- let me interrupt you at that point. Do you think the statement is accurate that self-defense that is not exempted from ---- or is not exempted from qualifying as persecution? Well, Your Honor, there's no published precedent on that question, and the board itself has not issued a precedent decision on that question. Right. But the I.J. says even if some of the actions occurred in self-defense, there's no provision in the law that exempts acts of self-defense from qualifying as persecution. That's certainly an accurate statement of the law. There is no explicit provision. There's no explicit provision in the I.J. But isn't it more logical to think that self-defense would be exempted? If you're saying if I'm attacked and in order to get asylum, I have to essentially not resist, otherwise I'm statutorily disqualified, that would seem to be an odd construction. Your Honor, again, we did not brief that issue, and we would be happy to brief the issue of whether self-defense, do a supplementary briefing for the Court. I think what your question points to is the very fact-intensive nature of persecutor cases. In this case, Mr. Mirovic characterizes his actions with a paramilitary-type organization, the Chetnik organization, comprised of Bosnian Serbs, as self-defense. Arguably, what he perceives to be self-defense was, in fact, an affirmative nationalistic type of aggressive behavior against other individuals in their country. We don't really know that from the record, though, do we? No. I mean, you have, and I take your point about the general country conditions, but we don't know in this particular case because the record really wasn't fully developed. I mean, I guess what I'm thinking, and that's why I want your reaction, is that it seems to me, my initial take on it is that's an inaccurate statement of law that self-defense could never qualify. If that's so, then it may need to be remanded for the correct application of the law. Imagine a Shiite from Baghdad who, prior to the fall of the Hussein regime, whose family was their house and hurt their family members, who would defend his family and, on occasion, hurt or kill the Sunnis who came to his house. Would that person be ineligible for asylum? Again, Your Honor, I think it would require more facts than are given in the hypothetical. In this case, I imagine the questions are exactly the same as this record. What happened? The answer, most of the time, the fedayeen or whatever they are, came to our house and attacked my family. That's it. I think that person would not be ineligible for asylum under the persecuted bar, Your Honor, and the reason is that factual context is distinguishable from this context. Here, there has been international concurrence, if you will, that the Bosnian Serbs were aggressors in the Yugoslavian conflict, number one. Secondly, Mr. Vukmarovic himself admitted that the Bosnian Serbs initiated ethnic cleansing and, in large part, before the Civil War itself broke out, it was conducted by proxy, if you will, by these paramilitary Chetnik militia units. Third, in response to the direct questions posed by the immigration judge, did you harm other individuals based on their race, religion, ethnicity, or nationality, he answered simply, yes. And given that, this case would be distinguishable from the Shiite example you give. But, you know, we have these, and, of course, this is an extreme situation, obviously, in this area, but we have civil unrest all over the globe, which is often based on tribal differences, ethnic differences. I mean, I think about Ethiopia. If you have a blanket rule that every time you defend yourself, you are automatically disqualified from seeking asylum, it seems to me that that's contrary to the whole idea of seeking asylum. The government would... Because you have to be, in other words, if you suffer persecution and you react at all, if you harm in reaction to that, if you're disqualified from seeking asylum, it seems to me that's a fairly broad rule, excluding a lot of folks who have been granted asylum. Your Honor, indeed, that is not the rule the government would urge upon the Court with this case. Well, no, but it says the IJ seemed to adopt that rule. There is no provisional law that exempts acts of self-defense from qualifying as persecution. So if that's, my only point is, if that's an inaccurate statement of law, then isn't remand required so that the facts can be more fully developed and with an accurate statement that self-defense can qualify, can, under certain circumstances, exempt? Your Honor, remand could probably further enlighten us as to the immigration judge's in-depth reasoning. However, we believe that the record as it stands does support the immigration judge's decision and the BIA's affirmance without opinion of his decision. In conclusion, because there's no evidence in the record that compels reversal of the IJ, and because Ventura should not be construed to require remand where such remand is futile, for example, in the example of the motion to reopen for the Convention Against Torture, the Court should affirm the BIA's final order and deny the petition for review. I see that my time is pretty much up. In fact, you're over your time. Thank you very much for your argument. Mr. Gardner, I think you have a minute or so. Thank you, Your Honor. Your Honor, what troubles me most about the government's response is the reliance on the country conditions, which this Court and other circuits have found are not totally reliable and, at times, depending on when they're written, represent a certain point of view issued by the Department of State. And there appears to be, in this case, a foregone conclusion that, by definition, a Bosnian Serb was the aggressor or persecutor, whereas the history of this region shows that the issue is probably amongst the most complex of all ethnic conflicts and, in fact, history is still being written with the trials which are currently being conducted. Finally, I do not believe that there's been a clear nexus between the racial characteristic of attack when there seems to be a general condition of fighting in these regions. Was he hitting someone because he was a Croat, even though he said yes in response to that question? He said he did. He said he did. He was led into that question. Is that different from an organized militia which goes into a village and rapes, pillages, and murders? It would seem to me that there's a distinction. In this case, in the general context, it seems to be more like a civil war. Okay. Thank you for your argument. Thank you, counsel, for their argument in this most interesting case. It's submitted for decision. We'll proceed to the last case on the calendar, which is Johns against Ashcroft.
judges: Fernandez, Hawkins, Thomas